IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CRIMINAL ACTION |
| v. | ) |
| | ) No. 11-20040-01-KHV |
| STEVEN CARMICHAEL WARREN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

Defendant pled guilty to armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). On April 30, 2012, the Honorable William P. Johnson sentenced defendant to 300 months in prison and five years of supervised release. This matter is before the Court on Defendant's Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #76) filed April 27, 2026. For reasons stated below, the Court overrules defendant's motion.

## Factual Background

On September 6, 2012, a grand jury returned an indictment which charged defendant with carrying a firearm during and in relation to and in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count 1), armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Count 2), and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e) (Count 3). Defendant pled guilty to Count 2. As part of the plea agreement, the government agreed to recommend that the Court dismiss Counts 1 and 3. Defendant's total offense level was 31, with a criminal history category VI, resulting in a range of 188 to 235 months in prison under the United States Sentencing Guidelines. See Presentence Investigation Report ("PSR") (Doc. #20) filed February 2, 2012, ¶ 93.

Judge Johnson imposed an upward variance and sentenced defendant to 300 months in prison, the statutory maximum under Count 2. In doing so, he explained that (1) the guideline range did not consider that as part of the plea, the government agreed to dismiss the Section 924(c) charge which carried a statutory minimum sentence of 300 months, (2) the guideline range did not adequately reflect the need to protect the public from defendant, (3) over the last 29 years, defendant had spent most of his time (87 per cent) facing charges or serving some kind of sentence, (4) in 1998, defendant had committed strikingly similar conduct to the instant offense when he pointed a loaded handgun at multiple bank employees, (5) despite serving a sentence of 160 months for bank robbery, defendant committed the instant bank robbery some 12 months after he was released from custody, and (6) defendant's prior convictions provided overwhelming evidence that he was a violent person. Transcript Of Plea And Sentencing Proceedings (Doc. #37) at 59–60, 69, 71, 76, 82–84.

Defendant currently is confined at USP Lompoc, a BOP facility in Lompoc, California. He is 61 years old. With good time credit, defendant's projected release date is May 6, 2034. Defendant asks the Court to grant immediate release or a reduced sentence because of his medical conditions and rehabilitation.

## Analysis

Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Defendant

seeks relief under the First Step Act of 2018, which allows the Court to order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). On November 1, 2023, the Sentencing Commission issued an applicable policy statement for motions for compassionate release filed by defendants. U.S.S.G. § 1B1.13(b), Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement).[1]

The Court may entertain requests for compassionate release only upon (1) a motion of the BOP or (2) a motion of defendant after he submits a request to the BOP and after the earlier of when he "fully exhaust[s] all administrative rights to appeal" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). For purposes of defendant's motion, the government concedes that he has satisfied the exhaustion prerequisite.

---

[1]     Under the policy statement, the Sentencing Commission has determined that extraordinary and compelling reasons exist if defendant establishes any one or combination of the following circumstances: (1) he has certain medical conditions; (2) he is at least 65 years old and has experienced a serious deterioration in health; (3) he has family circumstances which require him to act as a caregiver; (4) he was a victim of sexual or physical abuse by or at the direction of a correctional officer or other individual who had custody of him; (5) any other circumstances or combination of circumstances that when considered by themselves or together with any of the first four categories, are similar in gravity to the circumstances described in those four categories; and (6) a change of law if defendant has served ten years of an unusually long sentence and the change would produce a gross disparity between the sentence being served and the sentence likely to be imposed today. U.S.S.G. § 1B1.13(b)(1)–(6).

Defendant asserts that his medical conditions—especially Stage 3 Chronic Kidney Disease ("CKD")—constitute an extraordinary and compelling reason for release. Under the policy statement, defendant's medical circumstances alone can provide extraordinary and compelling reasons for a reduced sentence in the following circumstances:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

Defendant's medical records show that he has several medical conditions, including Stage 3 CKD, hypertension, hyperlipidemia, pre-diabetes, knee pain and low back pain. Defendant currently takes Atorvastatin for hyperlipidemia, Amlodipine for hypertension and Lisinopril for CKD and hypertension.  While defendant suffers from several ailments and his CKD is a serious condition which will likely worsen over time, he has not shown that his medical conditions are extraordinary and compelling reasons for relief within the meaning of the Sentencing Commission's policy statement.

Defendant argues that he satisfies Subsection (b)(1)(A) of the policy statement because he is suffering from Stage 3 CKD which constitutes "end-sta[g]e organ failure" and requires dialysis and a kidney transplant.  Defendant's Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #76) at 7; see id. at 5.  To evaluate defendant's claim, the Court consults publicly available information about kidney disease.[2]  The National Kidney Foundation has identified five Stages of CKD (Stage 5 the most severe) based on an individual's estimated glomerular filtration rate (eGFR) which shows how well kidneys filter waste.[3]  A patient does

---

[2]      In ruling on a motion for compassionate release, the Court has wide discretion to consider "any relevant materials."  Concepcion v. United States, 597 U.S. 481, 494 (2022) (only limitations are those set forth in statute or Constitution); see id. at 490–91 (district court has wide sentencing discretion which carries forward to later proceedings to modify original sentence). Specifically, the Court can consider hearsay evidence.  See United States v. Robinson, No. 24-8078, 2025 WL 2682588, at *3 (10th Cir. Sept. 19, 2025); see also United States v. Dermen, 143 F.4th 1148, 1228 (10th Cir.  2025) (proscriptions regarding admission of hearsay do not apply to sentencing); United States v. Ruby, 706 F.3d 1221, 1229 (10th Cir. 2013) (hearsay statements may be considered at sentencing if they bear some minimal indicia of reliability).

[3]      National Kidney Foundation, Stages of CKD, https://www.kidney.org/kidney-topics/stages-chronic-kidney-disease-ckd (last visited July 19, 2026).  At Stage 1, an individual has an eGFR at 90 per cent or higher.  Id.  At Stage 2, an individual has an eGFR from 60 to

(continued. . .)

not have "End Stage Renal Disease" until dialysis or a transplant is deemed necessary, which

ordinarily is not until Stage 5.  See National Kidney Foundation, When Should I Start Dialysis,

https://www.kidney.org/news-when-should-i-start-dialysis  (accessed July 19, 2026) ("It is

generally patients with Stage 5 CKD that are considered candidates to start dialysis therapy or be

considered for kidney transplantation.").  Defendant has an eGFR of 55 per cent, which places

him at Stage 3a.[4]  At this stage, he has experienced mild to moderate loss of kidney function, but

he has not established that he currently needs dialysis or a kidney transplant.  Indeed, a BOP

doctor noted that defendant went for a nephrology (kidney specialist) consult on January 11,

2024 and that the specialist did not recommend follow up.  BOP Medical Records (Doc #76-1) at

2.  Defendant has not shown that he is currently suffering from end stage kidney disease or other

terminal illness.  He therefore has not established extraordinary and compelling reasons under

Subsection (b)(1)(A) of the policy statement.

Defendant argues that he has shown extraordinary and compelling reasons under

Subsection (b)(1)(B) because Stage 3 CKD requires dialysis and a kidney transplant.

Defendant's Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc.

#76) at 5, 7.  Defendant asserts that the BOP has not evaluated whether he is a candidate for a

---

[3](. . .continued)
89 per cent.  Id.  At Stage 3a, an individual has an eGFR from 45 to 59 per cent, with mild to moderate loss of kidney function.  Id.  At Stage 3b, an individual has an eGFR from 30 to 44 per cent, with moderate to severe loss of kidney function.  Id.  At Stage 4, an individual has an eGFR from 15 to 29 per cent, with severe loss of kidney function.  Id.  At Stage 5, an individual has an eGFR less than 15 per cent or is on dialysis.  Id.

[4]      Defendant notes that from 2022 to 2024, his GFR dropped from 65 per cent to 55 per cent.  Defendant's Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #76) at 4.  As of June 5, 2023, his GFR was 55 per cent, but defendant does not assert that his GFR has dropped below that level.

"medically necessary kidney transplant." Id. at 5. Again, defendant has not shown that a kidney transplant currently is medically necessary.[5] Because defendant has an eGFR of 55 per cent, he has not established a current need for dialysis or a kidney transplant. He therefore has not established that his ability to provide selfcare for CKD is substantially diminished within the prison environment under Subsection (b)(1)(B) of the policy statement.[6] Cf. United States v. Holloway, No. 5:09-CR-30, 2021 WL 4710819, at *3 (W.D. Va. Oct. 8, 2021) (Stage 5 CKD and worsening condition due to complications from breakthrough COVID-19 infection present extraordinary and compelling reasons); United States v. Davidson, No. 2:16-CR-00139-2, 2020 WL 4877255, at *2, 18 (W.D. Pa. Aug. 20, 2020) (medical conditions including Stage 4 CKD combined with additional risks from COVID-19 pandemic present extraordinary and compelling reasons).

Defendant also cites Section (b)(2) of the policy statement, which states that extraordinary and compelling reasons exist if he (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. U.S.S.G. § 1B1.13(b)(2). Defendant is 61 years old, so he does not qualify for relief under this

---

[5]    Outside the prison context, after a patient has an eGFR below 20 per cent, medical personnel ordinarily evaluate patients for a transplant. National Kidney Foundation, When Should I Start Dialysis, https://www.kidney.org/news-when-should-i-start-dialysis (accessed July 19, 2026).

[6]    Because defendant has not established the need for dialysis or a kidney transplant, he also cannot satisfy Subsection (b)(1)(C) of the policy statement, which requires defendant to establish that he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

section of the policy statement.

Defendant argues that his rehabilitation warrants relief. Rehabilitation alone is not an extraordinary and compelling reason for relief. See 28 U.S.C. § 994(t) (while Sentencing Commission shall issue policy statements on what constitutes reasons for sentence reduction, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason"). Defendant has taken a number of educational classes, participated in vocational programs and made some progress toward rehabilitation. Even so, defendant's rehabilitation efforts in combination with his medical circumstances do not constitute an extraordinary and compelling reason for relief, and certainly not one of similar gravity to the circumstances identified in the first four categories of the applicable policy statement. Therefore, the Court finds that relief is not warranted under the catchall provision in the policy statement. See U.S.S.G. § 1B1.13(b)(5).

In sum, defendant's stated reasons—alone and collectively—are not "extraordinary and compelling" within the meaning of the compassionate release statute.

Even if defendant could somehow show that his stated grounds for relief collectively constitute "extraordinary and compelling" reasons for a reduced sentence and that such a finding is consistent with the applicable policy statement, the Court would deny relief after considering the factors under 18 U.S.C. § 3553. The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of sentencing (including the need to protect the public from further crimes of the defendant), any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct. See 18 U.S.C. § 3553(a).

In April of 2021, Judge Johnson determined that the Section 3553(a) factors supported a sentence of 300 months.  Defendant has not shown any circumstances which alter that conclusion.  A sentence of time served—which is approximately 212 months including good time credit—is inconsistent with the seriousness of defendant's offense, defendant's personal history and characteristics, the need for deterrence and the need to protect the public.  Defendant had several prior convictions including convictions for abuse of a child in 1991 and armed bank robbery in 1998.  PSR (Doc. #20), ¶¶ 47, 52.  Only some 12 months after the Bureau of Prisons released defendant in May of 2010, he again robbed a bank by pointing a loaded semi-automatic handgun at multiple bank employees.  Defendant accepted a generous plea agreement which included a government recommendation to dismiss the Section 924(c) charge.  Defendant has completed more than half his sentence, has no noted disciplinary incidents and made some progress toward rehabilitation. On balance, however, the factors under Section 3553(a) do not support a reduced sentence.

Defendant has not shown that "extraordinary and compelling" reasons or factors under Section 3553(a) support immediate release or a reduced sentence.  The Court therefore overrules defendant's motion for compassionate release.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #76) filed April 27, 2026 is **OVERRULED**.

Dated this 21st day of July, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-9-